[PHILADELPHIA, JANUARY, 1830.]

## M'EUEN and others *against* GIRARD.

The time required to bar a claim by the act of limitations, is not enlarged by a transfer of the claim. All the successive owners of it, have, together, only the time which the original claimant would have had.

THIS cause having been tried before Mr. Justice TOD, at *Nisi Prius*, where a verdict was rendered under his direction for the defendant, a motion was made on behalf of the plaintiffs for a new trial, which now came on to be heard.

The facts given in evidence on the trial, as they appeared from a statement furnished by the counsel, were as follows:—

" The defendant was one of the commissioners appointed to receive subscriptions to the Bank of the *United States.* The books were opened in *July* 1816, and after remaining open twenty days, a deficiency remained of three millions of dollars. The books were opened again on the 26th of *August*, and the defendant subscribed for the amount which remained.

" The plaintiffs allege, that they afterwards applied to the defendant for some of the shares (two thousand eight hundred and twenty-five,) which he had subscribed for, and he agreed to let them have them.

"Part of the subscription was in funded debt of the *United States.* But the bank was not organised until the 4th of *November*, and this part of the subscription could not be paid by transfer, until subsequently to that day. The interest, therefore, of the *United States*' loan, which became due on the 1st of *October*, was received by the individuals who still continued to hold the stock; and the defendant, on the 2d of that month, received the amount payable on his funded debt, subscribed to the bank, including that for the two thousand eight hundred and twenty-five shares which he had agreed to sell to the plaintiffs.

" On the 5th of *November*, the bank resolved, that the subscribers should be required to pay the interest on the *United States*' loan, which became due since the 1st of *July*, 1816.

"On the 7th of *November*, a resolution was adopted, to reconsider the resolution of the 5th. On the 25th of *November*, the resolution of the 5th of *November*, was rescinded; and, on the 7th of *January*, 1817, the cashier was authorised to return the interest to such subscribers as had paid it to the bank.

"The amount received by the defendant, of interest, on the proportion of the *United States*' stock, subscribed for the shares sold by him to the plaintiffs, was one thousand and fifty-nine dollars and sixty-seven and a half cents.

(M'Euen and others *v*. Girard.)

"For the recovery of this sum the plaintiffs brought their suit by agreement to enter an amicable action, dated the 22d of *November*, 1822, and filed the 27th of *November*, 1822.

The defendant pleaded *non assumpsit*, and *non assumpsit infra sex annos*.

The charge of the court was in favour of the defendant on the latter plea, and the verdict was given accordingly.

*T. Sergeant* and *Sergeant*, for the plaintiffs.—The contract of the parties is to be ascertained from all the circumstances of the transaction, and must be taken to have been, that the plaintiffs should be placed by the defendant in the same situation as if they had actually subscribed for the two thousand eight hundred and twenty-five shares. Had the plaintiffs been actual subscribers, they would have received the quarter's interest, and would have had a perfect right to it, upon the bank's relinquishing its claims.

The suit was brought in time. After the day of subscription, the bank had a clear, equitable interest in the proceeds of the stock. The claim of the bank being superior to that of the plaintiffs, suspended their right, while its own was asserted. The money belonged to the plaintiffs equitably and legally, only after the bank had relinquished its claim. This was done on the 7th of *January*, 1817; and the agreement to enter this action, was signed on the 22d of *November*, 1822. Up to this period, the defendant held the money as trustee for the bank, and subsequently, as trustee for the plaintiffs. If the plaintiffs had been actual subscribers, they would have received the interest on the 2d of *October*, but would have had no right to hold it for their own use until the bank had abandoned their claim.

*Binney*, for the defendant.—The contract was simply for the sale of two thousand eight hundred and twenty-five shares of bank stock to the plaintiffs. The defendant had fulfilled his part, by transferring the shares to such persons as the plaintiffs indicated, and there the business ended. Mr. *Girard* had subscribed for the whole balance which was not taken, and thus rendered a service to the public, because the amount required to be subscribed by individuals might not otherwise have been made up. He gave his money for the stock, and the plaintiffs were to have a certain number of shares for their money. There was no agreement until the 27th of *August*, 1816, when the defendant gave the plaintiffs scrip certificates, by which he engaged to transfer a certain number of shares, which he has done.

If the plaintiffs ever had a cause of action, it accrued on the 2d of *October*, 1816, when the quarter's interest was received. The bank never had any right to this interest, and the resolutions passed by the directors, amounted almost to an acknowledgment, that they had no right. The defendant was a purchaser of the stock, and was entitled to the interest which became due upon it. If, however, the bank had a right, then there was no right in the plaintiffs; and

(M'Euen and others *v.* Girard.)

an abandonment of the claim of the bank would vest no right in them.    And if the relinquishment was in favour of the plaintiffs, the defendant held adversely to those under whom the plaintiffs claimed, and the statute having begun to run against the bank, continued to run against the plaintiffs, who derived title from the bank. 4 *Wash. Rep.* 714.

The opinion of the court was delivered by

Huston, J.—This case arose out of the events which occurred about the time the stock of the *United States Bank* was taken, and out of the measures adopted by the directors of that bank soon after it went into operation.

The defendant was one of the commissioners appointed to receive subscriptions.    The books were opened in *July,* 1816, at different places in the several states, and continued open for a certain period. Time was given to inform the board of commissioners how much of the stock was taken.    It appeared, that an amount near to three millions of dollars was still unsold, and the books were again opened on the 26th of *August.*    After one or more persons had taken some shares, the defendant subscribed for all that remained, and paid the specie, and gave powers of attorney to transfer the stock due on such his subscription.    Very soon after, the plaintiffs appeared, and expressed some disappointment at not having an opportunity to subscribe.    The defendant agreed to transfer to them the number of shares which they wished, about two thousand eight hundred and twenty-five, and they paid him the sum in money which he had just paid, and transferred to him the amount of stock due, and which he had agreed to transfer to the bank.    Others were in the same situation, or nearly the same, as the plaintiffs, with regard to other shares obtained from the defendant about the same time; and more than one suit has been tried between such persons and the defendant; and these suits have not all eventuated in the same way.    Part of the subscription was in funded debt of the *United States.*    The bank not being organized at the time of the subscription, this stock was not transferred at that time, but remained in the name of him who owned it; but powers of attorney were given to transfer it so soon as the bank was organized.    About the 1st of *November,* the directors met.    In the mean time, on the 1st of *October,* one quarter's interest fell due on the funded debt, and was received by the defendant on all the stock which he was to transfer to the bank on his subscription, and also on that which the plaintiffs had transferred to him.    On the 5th of *November,* the directors resolved, that the subscribers should be required to pay to the bank the interest on the stock subscribed, which had fallen due after the subscription.    On the 7th of *November,* a resolution was brought in and adopted, to reconsider the resolution of the 5th. Several other resolutions on this subject were before the board, and on the 7th of *January,* 1817, the bank gave up its claim to the

(M'Euen and others *v*. Girard.)

disputed interest, and directed the cashier to return it to such of the stock-holders as had paid it to the bank.

Mr. *M'Euen*, as well as the defendant, was a director of the bank at that time, and of course, had notice of, and took a part in these proceedings.

The plaintiffs contended, the true spirit and meaning of their contract was, that they were to have the two thousand eight hundred and twenty-five shares from the defendant upon precisely the same terms as if they had subscribed for those shares to the bank, from which they would have got the interest on the stock part of the subscription on the 1st of *October*, and that he having received it, was indebted to them for so much money had and received to, their use. The defendant denied their construction of the agreement, and said, that he sold them so many shares of bank stock, and received the cash and transfer of funded debt in payment, and was absolutely entitled to that funded debt and its interest; and he also pleaded, and relied on the statute of limitations. The question, whether the bank was entitled to that interest, was one of considerable importance in the autumn of 1816, and has been very ably discussed here. The judge who tried the cause thought, and this court think, the defendant is protected by the lapse of time. This independently of that question.

The claim of the bank, if valid, must have been pursued in six years, or would have been barred. They asserted this claim for a part of those six years, and then either abandoned it, or transferred it, so far as relates to this subscription to the plaintiffs.

If the claim of the bank was valid, and they abandoned it, that left the money where it was, viz. with the defendant, and gave the plaintiffs no right to it.

If the acts of the bank are considered as transferring their right to the plaintiffs, then they transferred it as they held it, viz. a right vested on the 1st of *October*, or at most, on the 5th of *November*, and barred if not sued within six years from that time. This suit was not brought until after the lapse of more than six years from the 5th of *November*, 1816. It was brought on the 22d of ~~Octo-~~ ~~ber~~, 1822. The length of time requisite to bar a claim, is not increased by transferring the debt; all the successive owners have only the six years which would have been allowed to the original claimant. This part of the cause has been very ingeniously argued. It has been said, that while the bank claimed it, *M'Euen* and *Co.* could not sue for it: That while the bank claimed, *Girard* held it for them; and the implied promise to repay it, did not arise until their claim was at an end. Perhaps the true way to state the matter is this: If the bank had no right to it, the plaintiffs might have sued for it and recovered it, notwithstanding the claim of the bank. If they had a right, then the plaintiffs sue on their right transferred, and are barred, exactly when the bank would have been.

On the 7th of *November*, Mr. *M'Euen* knew of this claim. Al-

(M'Euen and others *v.* Girard.)

though he might not be certain whether the claim was available, that did not prevent the statute from running.   It affects a doubtful claim as much as an unquestionable demand.

It was said, "I send money by A. to pay my debt to B., and B. accepts less than the sum sent; then, and not till then, the law implies a promise by A. to return me the money." Perhaps the moment I give the money to A., the law implies a promise, that he will return to me so much as he does not give to B. I do not speak of a case where A. fraudulently induces a belief in me, that he has paid all the money to B.

Statutes of limitation appear to me to admit of less latitude of construction than any other kind of law.   Generally, where a money transaction has been totally unattended to for six years, it is because both parties know it to have been in some way settled; and know that this can be satisfactorily proved.   Death of witnesses, or of one of the parties, who knows what witnesses to call, would often enable a party to recover it a second time.   To prevent this, the law establishes a period, after which it shall not be inquired into. Men may differ in thinking that period too short or too long.   The law settles all dispute.   A day less than six years and there is no bar; a day after, and the claim is gone.

Under the name of trusts, many cases were at one time taken out of the statute.   To effect this, it is now settled, it must be such a trust as is only cognizable in chancery, where such a court exists; and that claims, which in all countries are the daily and proper subjects of a suit at law, are always subject to the operation of this statute.   The fraud, to take a case out of the statute, must be an actual imposition, a real deception practised.   The mere omission to pay, will not have that effect; if it had, the law is a dead letter.

Motion for a new trial overruled, and judgment on the verdict.